1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

KEVIN D. CARPENTER,

11              Plaintiff,

12       v.

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,[1]

14

15              Defendant.

16

CASE NO. 12-cv-05533 RBL

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

Noting Date: April 19, 2013

17       This matter has been referred to United States Magistrate Judge J. Richard

18 Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261,

20 271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 13, 14, 15).

21

22 _____

23       [1] Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil
24 Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

After considering and reviewing the record, the Court finds that the ALJ failed to evaluate properly steps two and three of the sequential disability evaluation process. Regarding plaintiff's physical impairments, the ALJ failed to consider properly whether or not plaintiff's impairments met or medically equaled a Listed Impairment with respect to disorders of the spine. The ALJ also erred in her review of the opinions of an examining psychological doctor when making the determination that plaintiff's mental impairment of depression had no more than a minimal effect on his ability to work.

Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## BACKGROUND

Plaintiff, KEVIN D. CARPENTER, was born in November, 1956 and was 51 years old on the alleged date of disability onset of February 22, 2008 (*see* Tr. 220-22). Plaintiff attended school to the tenth grade and received his GED (Tr. 85). Plaintiff has past work experience as a parts counterman, and past relevant work experience as an electrician, carpenter and woodworker (Tr. 53, 86, 88). He testified that he was laid off from his last employment because he "wasn't working up to capacity any more  . . . ." (Tr. 86).

Plaintiff has at least the severe impairments of hepatitis/cirrhosis of the liver, cardiomyopathy, possible COPD, lumbar degenerative disk disease, and alcohol dependence (20 CFR § 416.920(c)) (Tr. 44).

At the time of the hearing, plaintiff was living alone in a guesthouse on his father's property (Tr. 83).

PROCEDURAL HISTORY

On April 28, 2009, plaintiff protectively filed an application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (*see* Tr. 42, 220-222). Plaintiff's application was denied initially and following reconsideration (*see* Tr. 107, 108, 109-12, 114-16). Plaintiff's requested hearing was held before Administrative Law Judge Joanne E. Dantonio ("the ALJ") on December 15, 2010 (*see* Tr. 61-106). On July 15, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 39-60).

On April 25, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-7). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in June, 2012 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on August 28, 2012 (*see* ECF Nos. 10, 11). In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not substantial evidence demonstrates that plaintiff's impairments equal Listing 1.04A; (2) Whether or not the ALJ erred in rejecting plaintiff's mental health impairments as groundless at step two; (3) Whether or not the ALJ erred in improperly rejecting the opinions of plaintiff's treating and examining doctors; (4) Whether or not the ALJ erred in improperly rejecting plaintiff's subjective complaints; and (5) Whether or not the ALJ erred in failing to meet her burden at step five, to identify specific jobs, available in significant numbers, which plaintiff could perform in light of his specific functional limitations (*see* ECF No. 13, pp. 11-12).

1

## STANDARD OF REVIEW

2

Plaintiff bears the burden of proving disability within the meaning of the Social

3

Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

4

the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

5

172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

6

(9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

7

disability as the "inability to engage in any substantial gainful activity" due to a physical

8

or mental impairment "which can be expected to result in death or which has lasted, or

9

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

10

§§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's

11

impairments are of such severity that plaintiff is unable to do previous work, and cannot,

12

considering the plaintiff's age, education, and work experience, engage in any other

13

substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

14

1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

15

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

16

denial of social security benefits if the ALJ's findings are based on legal error or not

17

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

18

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

19

1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

20

such "'relevant evidence as a reasonable mind might accept as adequate to support a

21

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

22

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion

1  when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App.

2  LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v.*

3  *Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

1.  **Plaintiff's physical impairments: Whether or not the ALJ evaluated properly step three of the sequential disability evaluation process and whether or not substantial evidence in the record as a whole supports the ALJ's decision that plaintiff did not meet or medically equal a Listed impairment, specifically, Listing 1.04A**.

After finding at step two of the sequential disability evaluation process that plaintiff suffered from the severe impairments of hepatitis/cirrhosis of the liver, cardiomyopathy, possible COPD, lumbar degenerative disk disease, and alcohol dependence, at step three, the ALJ found that plaintiff did not meet or medically equal any of the Listed Impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (*see* Tr. 46). Plaintiff contends that the medical experts relied on by the ALJ when making her step three determination failed to evaluate relevant evidence regarding plaintiff's physical impairments (*see* Opening Brief, ECF No. 13, pp. 14-15). Plaintiff argues that he equals Impairment 1.04A, Disorders of the Spine (*id.*). Defendant argues that the ALJ's discussion of whether or not plaintiff "met a listing is sufficient and is supported by the record" (*see* Response, ECF No. 14, p. 5).

At step-three of the administrative process, if the administration finds that the claimant has an impairment(s) that has lasted or can be expected to last for not less than 12 months and is included in Appendix 1 of the Listings of Impairments, or is equal to a listed impairment, the claimant will be considered disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(d). The claimant bears the burden of proof regarding whether or not he "has an impairment that meets or equals the criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings"). *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Id.* at 683(*citing Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)).

Listing 1.04A, Disorders of the Spine, of the relevant federal regulations contains the following:

> Disorders of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings"), 1.04A.

1    In addition to her discussion regarding plaintiff's mental impairments within the

2    context of the Listings, the ALJ included the following discussion regarding her step

3    three evaluation:

> It is significant to note that none of the treating, reviewing or examining
> medical providers concluded that the claimant's physical impairments
> met or medically equaled any of the listed impairments. The undersigned
> has considered all of the listings of Appendix I, including Listings 1.04,
> 4.02 or 5.05, but find that the claimant's physical impairments do not
> meet or equal the criteria of any listed impairment. The undersigned
> adopts the opinion of Dr. Samuel Landau, the medical expert, that no
> Listings were met or equaled in consideration of the objective medical
> evidence including the claimant's liver cirrhosis scores, echocardiogram
> results, and lack of evidence of coronary artery disease.

(see Tr. 46).

Plaintiff contends that the ALJ's reliance on the medical expert, Dr. Samuel

Landau, M.D., in order to support her finding that plaintiff did not meet or medically

equal Listing 1.04A was legal error, as Dr. Landau did not evaluate all of the relevant

exhibits regarding plaintiff's physical impairments, and never evaluated Exhibit 18F, the

ninety-three page exhibit that contained his MRI (see Opening Brief, ECF No. 13, p. 14).

According to the hearing testimony, Dr. Landau, who is board certified, worked in

internal medicine and "primarily cardiovascular disease" (see Tr. 67). In fact, as pointed

out by plaintiff, Dr. Landau explicitly declined to consider the medical records with

respect to plaintiff's "lumbar issue," indicating that such records "would not have any

impact on [plaintiff's] cardiac problem" (see Tr. 69).

Defendant responds to plaintiff's argument by arguing that "Dr. Landau is a

cardiologist and the ALJ did not call upon him to give an opinion regarding Plaintiff's

back problems" (*see* Response, ECF No. 14, p. 6). In so arguing, defendant appears to have missed the point of plaintiff's argument. Defendant contends that "the fact that Dr. Landau did not consider 18F has no relevance to the ALJ's consideration of whether Plaintiff met Listing 1.04A" (*id.*).  As the ALJ explicitly "adopt[ed] the opinion of Dr. Samuel Landau, the medical expert, that no Listings were met or equaled," the Court does not agree with defendant's argument. Defendant appears to argue that it is not relevant that the only doctor explicitly relied on by the ALJ when she made her step three determination that plaintiff's physical impairments did not meet or medically equal the Listed Impairment 1.04A, Disorders of the Spine, had explicitly declined to review any evidence concerning plaintiff's "lumbar issues," such as his MRI (*see id.*). Such an argument is not persuasive.

Defendant admits that the state agency medical consultants, whose opinions also were relied on by the ALJ elsewhere in her written decision, likewise had not reviewed Exhibit 18F, as this exhibit was submitted after they provided their opinions.

Although defendant argues that plaintiff's MRI does not demonstrate that plaintiff met any of the Listed Impairments, defendant fails to recognize that plaintiff argues that he medically equaled Listed Impairment 1.04A, not that he met said Listing. Defendant's multiple paragraphs regarding how plaintiff has failed to demonstrate that plaintiff met a Listed Impairment is not persuasive on the issue of whether or not the ALJ properly found that plaintiff's impairments did not medically equal Listing 1.04A (*see id.*, pp. 6-7).

Again, the Court notes that the ALJ indicated explicit reliance on the opinion of a medical expert who practiced "primarily cardiovascular disease" when she found that plaintiff did not meet or medically equal Listing 1.04A, Disorders of the Spine (*see* Tr. 67). This medical expert explicitly declined to review plaintiff's records regarding his "lumbar issues" (*see* Tr. 69). Tellingly, defendant fails to respond to plaintiff's contention that the ALJ explicitly indicated that had she known before the hearing that plaintiff suffered from "back problems" she would have called a medical expert whose specialty was in this area (*see* Opening Brief, ECF No. 13, pp. 14-15). The Court notes that after the ALJ asked if plaintiff had any objections to the medical expert, plaintiff's attorney indicated that there wasn't an objection, but noted that "he didn't address the back problems," and that this was "out of his specialty anyways" (*see* Tr. 75). The ALJ responded as follows:

> Right, and I, I am aware of that because essentially there weren't any back problems that were in the record when I initially reviewed this, so it was, I was completely unaware that there was a back issue, so otherwise probably would have done that in this case. All right.

(Tr. 75).

The Court notes that an ALJ "has an independent 'duty to fully and fairly develop the record.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is represented by counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) (*citing Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir. 1981)).  However, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if

the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan*, *supra*, 242 F.3d at 1150.

Plaintiff indicated that because the ALJ failed to call a medical expert regarding his disorder of the spine, his attorney sent out his medical records file to be reviewed by an orthopedist on the Social Security Administration's "roster of medical experts," Dr. Anthony E. Frances, M.D. (*see* Opening Brief, ECF No. 13, p. 15). Plaintiff submitted the August 16, 2011 opinion of Dr. Francis to the Appeals Council (*see* Tr. 5, 550-554). Therefore, this opinion was not available to the ALJ.

The Court may review new evidence presented first to the Appeals Council when determining whether or not "in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1232 (9th Cir. 2011) (*citing Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993)). The Ninth Circuit does not require a finding that plaintiff has good cause for failing to produce the new evidence earlier. *See Ramirez, supra*, 8 F.3d at 1451-54; *see also Taylor, supra*, 659 F.3d at 1232.

Recently, the Ninth Circuit held that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court *must* consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) (emphasis added); *see also Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) ("[s]entence-six remands may be ordered in only two situations: where the

Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented *before the agency*") (emphasis added) (*citing* 42 U.S.C. § 405(g) (sentence six); *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991); *cf. Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

This Court must consider the new opinion evidence from Dr. Francis when considering whether or not the ALJ's determination that plaintiff did not meet or medically equal Listed Impairment 1.04A is supported by substantial evidence in the record as a whole. *See Brewes*, *supra*, 682 F.3d at 1159-60; s*ee also Shalala*, *supra*, 509 U.S. at 297 n.2.

Dr. Francis did not examine plaintiff, but reviewed his medical records (*see* Tr. 550-551). Dr. Francis indicated his opinion as follows:

> On a more likely than not basis, the claimant has equaled 1.04A for an intermittent or incomplete radiculopathy in the lumbar spine since the AOD [alleged onset date] of 2/22/08 to the present. An MRI of the lumbar spine demonstrated disc pressure on the L5 nerve roots bilaterally with facet joint arthritis and stenosis. This is pathological anatomy which is an explanation for his ongoing problems with radiculopathy. There is also a significant contribution from other pathological processes including cardiovascular disease with coronary artery disease, sever liver cirrhosis and Hepatitis C.

> Based on my review of the record, I would be of the opinion the claimant has been at a less than sedentary work RFC [residual functional capacity] since the AOD of 2/22/08 to the present.

> The bulk of the information leading to my conclusion the claimant has equaled 1.04A was found in Exhibit 18F. This includes the MRI of the lumbar spine which shows the presence of pathological anatomy consistent with the physical findings. Absent Exhibit 18F, it would be possible to conclude the patient did not equal the listing 1.04A.

(Tr. 550).

Based on a review of the relevant record, including the new opinion from Dr. Francis in which he indicates his opinion that plaintiff medically equaled the Listed Impairment 1.04A, Disorders of the Spine, the Court concludes that the ALJ's determination that plaintiff did not meet or medically equal Listed Impairment 1.04A is not based on substantial evidence in the record as a whole. *See Magallanes, supra*, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"). Although this Court does not review the decision of the Appeals Council, the Court finds that defendant's contention that substantial evidence "still supports the Commissioner's decision because the Appeals Council correctly found that Dr. Francis' opinion did not provide a basis for changing the ALJ's decision" is unpersuasive (*see* Response, ECF No. 14, p. 7).

Had the ALJ found that plaintiff met or medically equaled Listing 1.04A, plaintiff would have been found to be disabled, therefore, the error by the ALJ in making her step three determination that plaintiff did not meet or medically equal Listing 1.04A is not harmless. *See* 20 C.F.R. § 404.1520(d).

For this reason, and based on the relevant record, the Court concludes that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

2.  **Plaintiff's mental impairments: Whether or not the ALJ erred in rejecting plaintiff's mental health impairments as groundless at step two and whether or not the ALJ erred in improperly rejecting the opinions of the plaintiff's examining doctor, Dr. Daniel Neims, Psy.D. on the issue of plaintiff's limitations resulting from his mental impairments**.

Step-two of the administration's evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The ALJ "must consider the combined effect of all of the claimant's impairments on h[is] ability to function, without regard to whether each alone was sufficiently severe." *Smolen, supra*, 80 F.3d at 1290 (citations omitted).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"  *Smolen, supra*, 80

F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting*

Social Security Ruling "SSR" 85-28)). The step-two analysis is "a *de minimis* screening

device to dispose of groundless claims," when the disability evaluation process ends at

step 2. *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54

(1987)).

　　　According to Social Security Ruling 96-3b, "[a] determination that an individual's

impairment(s) is not severe requires a careful evaluation of the medical findings that

describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-

related symptoms), and an informed judgment about the limitations and restrictions the

impairments(s) and related symptom(s) impose on the individual's physical and mental

ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR

96-7p); *see also Slayman v. Astrue*, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D.

Wa. 2009) (unpublished opinion). If a claimant's impairments are "not severe enough to

limit significantly the claimant's ability to perform most jobs, by definition the

impairment does not prevent the claimant from engaging in any substantial gainful

activity." *Bowen, supra*, 482 U.S. at 146. Plaintiff bears the burden to establish by a

preponderance of the evidence the existence of a severe impairment that prevented

performance of substantial gainful activity and that this impairment lasted for at least

twelve continuous months.  20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a),

416.912(a); *Bowen, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601

(9th Cir. 1998) (*citing Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). It is the

claimant's burden to "'furnish[] such medical and other evidence of the existence thereof

as the Secretary may require.'" *Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. §

423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)); *see also McCullen*

*v. Apfel*, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. §

405(g); 20 C.F.R. §§ 404.1505, 404.1520).

Here, the ALJ found that plaintiff's depression caused "no more than minimal

limitations in the ability to perform basic work activities, and so it is considered

nonsevere" (*see* Tr. 46). This finding is contrary to the opinion of examining

psychological doctor, Dr. Daniel Neims, Psy.D..  Therefore, the ALJ was required to

provide specific and legitimate reasons supported by substantial evidence in the record

for her rejection of the opinion of Dr. Neims. *See Lester v. Chater*, 81 F.3d 821, 830-31

(9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)) (an

examining doctor's opinion can be rejected only "for specific and legitimate reasons that

are supported by substantial evidence in the record"); *see also Van Nguyen v. Chater*, 100

F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831) ("In order to

discount the opinion of an examining physician in favor of the opinion of a nonexamining

medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by

substantial evidence in the record").

Dr. Neims examined and evaluated plaintiff on December 9, 2008 (*see* Tr. 338-

50). He conducted a mental status examination ("MSE") and observed that plaintiff was

sleepy and lethargic, yet also rigid and tense (Tr. 342, 344-47). Dr. Neims also observed

that plaintiff exhibited mild aberrance in fine motor behavior and decreased overall level

of activity (*see* Tr. 344). Plaintiff exhibited slow impeded speech at low volume and erred

1  in his completion of the serial seven task (*id.*). Dr. Neims assessed plaintiff's thought

2  process as slow, and noted an error in plaintiff's ability to interpret proverbs (*see* Tr.

3  345). Dr. Neims assessed plaintiff's affect as restricted/constricted and his mood as

4  dysphoric, euthymic and anxious (Tr. 346).

5      Dr. Neims assessed that plaintiff suffered from moderately severe limitations on

6  his activities of daily living in six out of eight areas assessed (*see id.*). The Court notes

7  that the ALJ assessed that plaintiff suffered from only mild limitations in his activities of

8  daily living (*see* Tr. 45).

9      Dr. Neims diagnosed plaintiff with depressive disorder, not otherwise specified,

10  (secondary to medical and psychological factors); alcohol abuse in 18 month+ remission

11  and polysubstance abuse in very long term remission (*see* Tr. 340). Dr. Neims opined that

12  plaintiff's impairments resulted in a moderately severe limitation on plaintiff's ability to

13  perform routine tasks (*see* Tr. 342). He also assessed that plaintiff experienced a

14  moderate level of limitation on his ability to relate appropriately to co-workers and

15  supervisors; to interact appropriately in public contacts; and to control physical and motor

16  movements and maintain appropriate behavior (*id.*). Notably, Dr. Neims opined that

17  plaintiff suffered from marked limitation on his ability to respond appropriately to and

18  tolerate the pressure and expectations of a normal work setting (*id.*). The ALJ rejected the

19  most severe of Dr. Neims' assessments of plaintiff's limitations on his abilities to

20  function in a work setting (*see* Tr. 44-45).

21

22

23

24

In the context of the step two determination that plaintiff's depression had no more than a minimal effect on plaintiff's ability to work, the ALJ included the following discussion regarding Dr. Neims' treatment records:

> During a mental evaluation with Dr. Neims in December 2008 while the claimant was in remission from alcohol, the claimant scored only in the mild range on a self-reported depression evaluation and was assessed with only mild limitation in ability to understand and remember and follow simple and complex instructions; learn new tasks; exercise judgment; and make decisions (internal citation to Ex. 2F).
>
> Dr. Neims also opined in this December 2008 evaluation that the claimant had moderate limitations in ability to perform routine tasks and in areas of social functioning as well as marked limitation in ability to tolerate the pressures and expectations of a normal work setting. The undersigned accords no weight to these particular assessments because the lack of objective evidence to substantiate such degrees of limitations, the absence of mental health treatment at the time, and the inconsistency with other evidence such as the claimant living independently, enjoying sports, using the computer, playing fantasy football and soccer, and doing light yard work at the time (internal citation to Ex. 6E).

(Tr. 44-45; *see also* Tr. 53).

The Court first notes that the ALJ's second reason for giving no weight to some of the opinions of Dr. Neims, that there was an "absence of mental health treatment" is erroneous (*see* Tr. 45). Plaintiff was receiving treatment for his mental health treatment as he was taking anti-depressant medication (*see* Tr. 33).

Furthermore, even if plaintiff was not seeking mental health treatment, the ALJ does not explain how the fact that an individual may not have sufficient insight into his mental health condition to seek out treatment thereby negates the opinion of a mental health doctor regarding the individual's limitations or his need for said treatment. Although failure to seek out treatment for a physical problem, such as pain, may suggest

logically that the individual really was not suffering from pain if not doing everything to remedy the situation, when mental impairments are involved, it is not uncommon to see a failure to realize the presence of an impairment or to realize the need for treatment for the impairment. Such failure of insight on the part of a person with a mental impairment does not necessarily call into question a mental health specialist's opinions regarding that individual's functional limitations.

Although it is often the case that a claimant's failure to comply with prescribed treatment calls into question the severity of the claimant's symptoms, this generally is because such failure suggests that the claimant willfully is failing to submit to medical treatment because he wishes to remain disabled and receive benefits, or because he is not suffering from that severe of an impairment if not doing everything possible to remedy it. *See* 20 C.F.R. § 404.1530 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"); *see also* SSR 96-7 1996 SSR LEXIS 4, at *21- *22 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . .  and there are no good reasons for this failure"); *but see Nichols v. Califano*, 556 F.2d 931, 932 (9th Cir. 1977) (even if a condition could be remedied by surgery, if the claimant's "actions were reasonable under the circumstances, then the district court's judgment upholding the [written decision by the ALJ] must be reversed"). However, a good reason can provide a valid excuse for not following prescribed treatment, such as that a treating family physician does not recommend the treatment, or that it is excessively painful or

dangerous. 20 C.F.R. § 404.1530; SSR 96-7 1996 SSR LEXIS 4, at *21-*22; *Nichols, supra*, 556 F.2d at 933.

In addition, a person suffering from a mental illness may not realize that he needs his medication, or he may not even realize that his "condition reflects a potentially serious mental illness." *See Van Nguyen*, *supra,* 100 F.3d at 1465. "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (*quoting* with approval, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). It is even more questionable to doubt the opinion of a psychological doctor due to a lack of insight of the patient.

When a person suffers from a mental illness, and the mentally ill person does not have the requisite insight into his condition to seek or comply with treatment, or does not have the memory and focus to have the ability to take a medication three times a day, this fact actually can indicate a greater severity of mental incapacity. *See Van Nguyen, supra*, 100 F.3d at 1465; *see also Blankenship, supra*, 874 F.2d at 1124.

In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7, 1996 SSR LEXIS 4, at *21-*22;  *see also Regennitter v. Comm'r SSA*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the

sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it") (citations, ellipses and brackets omitted). Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356).

Here, plaintiff testified that he isolates himself a couple of times a month and does not leave the house for two or three days (*see* Tr. 97). This testimony suggests a possible explanation as to why plaintiff may not have been seeking out mental health treatment such as regular counseling sessions, other than lack of impairment or desire to have social security benefits (*id.*). Therefore, the ALJ should have discussed this potential explanation for the assessed lack of treatment before relying on this factor to support her failure to credit the opinions of examining psychological doctor, Dr. Neims. *See* SSR 96-7, 1996 SSR LEXIS 4, at *21-*22; *Van Nguyen, supra*, 100 F.3d at 1465; *see also Blankenship, supra*, 874 F.2d at 1124.

The first reason provided by the ALJ for her failure to credit fully some opinions from Dr. Neims was a lack of objective evidence substantiating his opinions (*see* Tr. 45).

However, in finding a lack of objective evidence, the ALJ appears to misinterpret the meaning and import of the mental status examination ("MSE").

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination [MSE] allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the [MSE] is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The MSE generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *See Van Nguyen*, *supra*, 100 F.3d at 1465.

When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctor, are correct. *Reddick, supra*, 157 F.3d at 725; *see also Blankenship, supra*, 874 F.2d at 1121 ("When mental illness is the basis of

1  a disability claim, clinical and laboratory data may consist of the diagnosis and

2  observations of professionals trained in the field of psychopathology. The report of a

3  psychiatrist should not be rejected simply because of the relative imprecision of the

4  psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v.*

5  *Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)); *Smith v. Astrue*, 2012 U.S. Dist. LEXIS

6  61640 at *11 (W.D. Wash. April 4, 2012) (unpublished opinion) (*quoting Schmidt v.*

7  *Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges

8  of the Social Security Administration, must be careful not to succumb to the temptation

9  to play doctor. The medical expertise of the Social Security Administration is reflected in

10  regulations; it is not the birthright of the lawyers who apply them. Common sense can

11  mislead; lay intuitions about medical phenomena are often wrong") (internal citations

12  omitted)).

13

14        Regarding the final reason provided by the ALJ, that is, an "inconsistency with

15  other evidence such as the claimant living independently, enjoying sports, using the

16  computer, playing fantasy football and soccer, and doing light yard work at the time," the

17  Court finds that the ALJ failed to explain any inconsistency between Dr. Neims' opinions

18  and plaintiff's cited activities (*see* Tr. 45 (*citing* Ex. 6E)). Dr. Neims did not opine that

19  plaintiff was so limited that he could not live independently, watch TV, use the computer

20  play fantasy football or do light work. In fact, Dr. Neims was well aware of these

21  activities, as he described them in his report (*see* Tr. 343). Dr. Neims, a psychological

22  doctor who specialized in mental health and who examined plaintiff, nevertheless opined

23  that plaintiff suffered from the various limitations in his abilities to function in a work

24

environment despite these activities (*see id.*). The ALJ has failed to explain why her own interpretations, rather than those of the doctor, are correct. *See Reddick, supra*, 157 F.3d at 725; *see also Blankenship*, *supra*, 874 F.2d at 1121.

For the reasons stated and based on the relevant record, the Court concludes that the ALJ committed legal error in her evaluation of plaintiff's mental impairments. Given the vocational expert's testimony, relied on by the ALJ in making her ultimate determination regarding plaintiff's ultimate nondisability status, the Court also concludes that the ALJ's error regarding plaintiff's mental impairments is not harmless (*see* Tr. 101-02). *See Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki*, *supra*, 556 U.S. at 407.

For the reasons stated and based on the relevant evidence, the Court concludes that plaintiff's mental impairments should be evaluated anew following remand of this matter.

3. **Whether or not the ALJ erred in improperly rejecting the plaintiff's subjective complaints**.

The Court already has determined that the ALJ committed harmful legal error in her evaluation of plaintiff's physical impairments, specifically his disorders of the spine, *see supra*, section 1, and his mental impairments, *see supra*, section 2. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). For this reason, and based on a review of the relevant record, the Court concludes that plaintiff's testimony and credibility should be assessed anew following remand of this matter.

The severity of plaintiff's alleged mental impairment of anxiety depends much on plaintiff's credibility. Hence, for this reason, the reasons discussed above, *see supra*, section 2, and the relevant record, the Court concludes that plaintiff's anxiety should be assessed anew following remand of this matter, including at step two of the sequential disability evaluation process regarding whether or not this impairment is severe.

Similarly, because the medical evidence and plaintiff's credibility must be assessed anew, the ALJ's step five finding, contested by plaintiff, must, as a necessity, be determined anew following remand of this matter if necessary.

4. **Whether this matter should be reversed and remanded for a direct award of benefits or for further administrative proceedings**.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).   If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate in order to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's credibility and residual functional capacity. *See Sample, supra*, 694 F.2d at 642.

Remanding the matter will allow the Commissioner the opportunity not only to reconsider its decision, but also to consider fully the evidence plaintiff submitted to the Appeals Council (*see* Tr. 5).

1

CONCLUSION

2

Based on the stated reasons and the relevant record, the undersigned recommends

3

that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42

4

U.S.C. § 405(g) to the Commissioner for further consideration.  **JUDGMENT** should be

5

for **PLAINTIFF** and the case should be closed.

6

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

7

fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R.

8

Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

9

purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

10

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

11

matter for consideration on April 19, 2013, as noted in the caption.

12

13

Dated this 27th day of March, 2013.

14

15

16

_____
J. Richard Creatura
United States Magistrate Judge

17

18

19

20

21

22

23

24